234                      203 FEDERAL REPORTER

BODEN & HAAC et al. v. LOVELL.

(Circuit Court of Appeals, Fifth Circuit.   March 4, 1913.)

No. 2,303.

1. BANKRUPTCY (§ 311*)—PREFERENCES—APPROPRIATION OF GOODS.

Bankrupts, who were cotton merchants, having procured claimants to
pay drafts on the faith of forged bills of lading for cotton, shipped cot-
ton to the claimants, to be delivered under the forged bills.   Bank-
ruptcy having intervened, claimants procured the cotton pursuant to for-
eign attachments, the foreign court not recognizing the bankruptcy pro-
ceedings in the United States.   *Held*, that it having been determined
that claimants were the owners of such cotton, and that they, by paying
the forged drafts, had paid for the cotton prior to the bankruptcy pro-
ceedings, their appropriation thereof did not constitute an unlawful
preference so as to preclude the allowance of their other claims in bank-
ruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500;
Dec. Dig. § 311.*]

2. BANKRUPTCY (§ 312*)—ATTACHMENT PROCEEDINGS—ESTOPPEL.

Claimants having paid drafts attached to forged bills of lading for
cotton alleged to have been shipped by the bankrupts, cotton was actual-
ly shipped under genuine bills, which the bankrupts destroyed, and sub-
sequent to the intervention of bankruptcy was secured by claimants under
foreign attachments.   The bankrupts' trustee procured certain English
creditors also to attach the cotton, but their attachments were subse-
quent to those of claimants, who subsequently were permitted to retain
the cotton under an agreement based on a large consideration paid to
the trustee, which recognized claimants' ownership of all the cotton at-
tached.   *Held*, that such litigation could not operate to estop claimants
from asserting other claims not involved therein in the bankruptcy pro-
ceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500;
Dec. Dig. § 312.*]

Appeal from the District Court of the United States for the North-
ern District of Alabama; Wm. I. Grubb, Judge.

In the matter of bankruptcy proceedings of Knight, Yancey & Co.
From a decree (190 Fed. 893) rejecting proofs of debt of Boden &
Haac and others, foreign creditors of the bankrupt, on objection of
W. S. Lovell, trustee, the creditors appeal.   Reversed and remanded,
with instructions.

Wm. D. Thomson, of Atlanta, Ga., for appellants.

Walker Percy, A. Benners, and Borden Burr, all of Birmingham,
Ala., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, Dis-
trict Judge.

PARDEE, Circuit Judge.   This is an appeal from a decree reject-
ing proofs of debt in the bankruptcy of Knight, Yancey & Co.   The
appellants were creditors of the bankrupt, and proved their claims in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

regular form. Objections were filed by the trustee to the allowance of each of the said claims as follows:

"First. That said alleged creditor has not a provable claim against the estate.

"Second. That said creditor has received preferences voidable under section 60, subd. B, of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), and said creditor has not surrendered such preferences.

"Third. That there has been made to said creditor conveyances or transfers of property void or voidable under section 67, subd. E, and such creditor has not surrendered such conveyances or transfers.

"Fourth. That at the time of the adjudication in bankruptcy of said bankrupt firm there was in the possession of carriers for the purpose of being transported to Bremen, Germany, a large amount of cotton, to wit, 10,000 bales, as to which said bankrupt estate claimed to have an interest in and the title to. That the bankruptcy laws of the United States are not recognized in the country of Germany. That said creditor, with knowledge or notice of the claim of said estate in and to said cotton, sued out process under the German law similar to what is known under our law as a general attachment, and had such process levied upon such cotton in the possession of said carrier, and by means of said process obtained a large sum of money, to wit, a sum larger than the amount which said creditor now seeks to prove as an indebtedness against said estate. Your petitioner avers that such attachment was sued out by said creditor and levied upon said property as belonging to and being the property of Knight, Yancey & Co., a partnership, and, inasmuch as the German law does not recognize the title of your petitioner or the court proceedings under which he is acting, said property was enabled to be seized by said creditor and applied in a large part to the satisfaction of all his debts except the amount which it now seeks to prove against said estate."

This objection of the trustee was sustained by the referee, who held that the cotton received by the appellants in Germany after the adjudication in bankruptcy was, under the facts shown in the record, a portion of the bankrupt's estate, and that, therefore, the appropriation of said cotton by appellants was in effect a payment to them out of the funds of the estate of Knight, Yancey & Co.; and, while he allowed the claims to be filed, he further ordered that the appellants should not receive any dividends thereon until other creditors had received dividends in the proportion above stated. This order of the referee, refusing participation in dividends, was on petition for review affirmed by the District Court.

The case was tried upon an agreed statement of facts, which shows, among other matters not material to recite, that the appellants resided in Germany, and had been purchasers of cotton from the bankrupt. This cotton was sold to them in 100-bale lots, and it was customary, upon shipping to the appellants each 100 bales of cotton, to draw a draft with bill of lading attached for the purchase price of said 100 bales. Each of the appellants had bought several separate lots of cotton in this way, and held several separate and independent drafts, each of said drafts being for the purchase price of a certain 100 bales of cotton, and to each of said separate drafts had been attached a bill of lading calling for the particular 100 bales of cotton described and referred to in the draft attached thereto. When the appellants paid the drafts in question, and got the bills of lading, they believed the bills of lading to be genuine, and that they thereby became purchasers of cot-

ton described in the bills of lading. Upon the failure of Knight, Yancey & Co. and their adjudication as bankrupts, it became apparent to the receiver of the bankrupts that the bills of lading attached to the drafts were forged, and that no cotton had been shipped at the time the drafts were paid. It further appeared, however, that subsequent to the issuance of the forged bills of lading and the payment of the drafts attached thereto cotton had been shipped on genuine bills of lading bearing similar marks of identification to that described in certain of the bills of lading held by the appellants, and that such cotton was then on board vessels bound for Germany; and that, as to certain other drafts held by said appellants for separate and distinct lots of cotton, no shipments whatsoever had been made. Immediately upon discovering these facts, the receiver of the bankrupt notified the German creditors that the bills of lading held by them were spurious, and that they had no title to any cotton under said bills of lading. In this state of affairs, and without definite information as to all of the facts in the case, or as to their rights, the appellants took out attachment suits on those drafts to which had been attached bills of lading calling for cotton bearing the same marks as were borne by the actual cotton on board the two steamships in question. Those drafts held by the appellants which represented the purchase price of cotton not bearing marks similar to those on these two vessels, were not included in the attachment suits, and are the drafts which the appellants have proven in the bankruptcy court. The receiver of the bankrupt never had possession of the original bills of lading for the cotton on these two steamships, as they had been taken from the files of Knight, Yancey & Co. by John W. Knight and concealed by him prior to the adjudication. It afterwards developed that as a matter of fact it had been the custom of John W. Knight for some time prior to his failure to attach forged bills of lading to drafts, and in this manner collect from customers who thought at the time of paying the drafts that the bills of lading were genuine. It had further been his custom to subsequently ship, under genuine bills of lading similar in form, real cotton to the parties who had previously paid drafts with forged bills of lading attached. In such cases Knight would conceal or destroy the genuine bills of lading, and allow the carriers to make delivery on forged bills of lading; and prior to the adjudication in bankruptcy this had been done, and parties holding forged bills of lading had received cotton marked as was the cotton in their forged bills, and had never known the fact that the bills under which the cotton had been delivered were not genuine bills of lading.

The receiver employed counsel in Germany to try to get this cotton for the bankrupt estate. The counsel so employed informed the receiver that the laws of Germany would not recognize any title claimed by the receivers to have vested in them by operation of the bankruptcy law of the United States. The receiver, therefore, not having the original bills of lading so as to be able to claim title as holders of the original bills of lading, made no direct effort to get said cotton by legal process, but made a secret agreement with other general creditors of Knight, Yancey & Co. residing in Liverpool, who,

however, had no special claim to the particular cotton on board the two steamships in question, under which these Liverpool creditors took out in Germany attachments against Knight, Yancey & Co., and sought to levy the same on the cotton then approaching the German ports, it being understood that the receiver of Knight, Yancey & Co. would bear the expense of this attachment proceeding, and should, as between the receiver and the Liverpool creditors, get the benefit of any profit that might be obtained by the Liverpool creditors from this proceeding. These attachment proceedings by both the Liverpool creditors and the appellants were taken out before the vessels arrived in port, and an effort was made to levy both attachments on the cotton in these ships when they arrived in port. The appellants succeeded in getting their attachment levied first, which, under the law, gave them a preference as against the Liverpool creditors whose attachment was levied subsequently. No subsequent proceedings were taken in either of the attachment cases after the levy thereof, but an agreement was effected by which the cotton on these ships and other ships not yet arrived or attached was turned over to the appellants as owners thereof, upon their paying to the Liverpool creditors, for the benefit of the trustee, a certain amount of money per bale.

The referee in certifying the matter to the District Court states that the question to be considered on review is:

"Whether or not the cotton received by the petitioners in Germany under the circumstances set out in said agreed statement of facts was a part of the bankrupt estate of Knight, Yancey & Co. at the time of its receipt by said creditors, so that the receipt thereof by said creditors was in effect, a partial payment of their claims against said bankrupt estate."

The decision of the judge of the District Court is based upon the theory that the appellants were estopped by the receipt of the cotton in Germany from claiming a right to share in any dividend which might be declared. He expressly declined to go into the question as a matter of fact and law as to whether the cotton received by the appellants in Germany was property of the bankrupt estate of Knight, Yancey & Co. at the time of its receipt by the appellants, or whether it was the property of the appellants themselves, title to which had passed to them prior to the date of the adjudication in bankruptcy, holding that, by reason of the estoppel which he found to exist against appellants, the decision of the question as to the ownership of the cotton at the date of the adjudication was rendered unnecessary.

Appellants contend that this decision of the District Judge was not warranted by the pleadings and record in the case, and that the judge should have considered and decided the question as to the legal and equitable ownership of the cotton at the date of the adjudication in bankruptcy, as certified to him by the referee, and should have held that said cotton was the property of appellants. When this case was decided in the District Court, there was then pending in this court two other cases in which the custom of business of Knight, Yancey & Co. in handling foreign cotton on forged bills of lading was under consideration, and in both this court, after a thorough consideration of all of the authorities bearing on the question as to whether the title of the

cotton under such circumstances passed to the foreign purchaser or whether it remained in the bankrupt estate, subsequently decided in favor of the foreign purchasers. Lovell v. Newman, 192 Fed. 753, 113 C. C. A. 39; Hentz v. Lovell, 192 Fed. 762, 113 C. C. A. 48.

[1] These decisions are controlling, and require the holding that the cotton received by appellants under the forged bills of lading was cotton which they had purchased and paid for prior to the bankruptcy of Knight, Yancey & Co. This being the case, the possession and appropriation of the same cannot be held to be an unlawful preference void under the bankruptcy law.

[2] The attachment litigation started in Germany, which resulted in the agreement based on a large consideration paid to the trustee which recognizes the ownership of the appellants of all the cotton attached, seems to have been instituted under a general misapprehension of the law and facts, and we find nothing therein on which to predicate an estoppel preventing the appellants from asserting in the bankruptcy of Knight, Yancey & Co. their claims not in any wise involved in the litigation aforesaid.

The decree of the District Court is reversed, and the cause is remanded, with instructions to overrule the objections of the trustee, and allow the claims presented by the appellants as ordinary debts in the bankruptcy of Knight, Yancey & Co.